IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 11-37 |
| | ) | |
| GREGORY J. PODLUCKY | ) | |
| G. JESSE PODLUCKY | ) | |
| KARLA S. PODLUCKY, | ) | |
| | ) | |
| Defendants. | ) | |

O R D E R

AND NOW, this 21st day of May, 2012, upon consideration of the Government's Motion for Preliminary Order of Forfeiture (Doc. No. 198) filed in the above-captioned matter on April 18, 2012, and upon further consideration of Defendants' responses thereto (Doc. Nos. 213 and 214) and the Government's memorandum in reply (Doc. No. 215),

IT IS HEREBY ORDERED that said motion is GRANTED.

The Court, based on the record in this case, finds that the Government has proved by a preponderance of the evidence that the funds deposited into Charles Schwab Account No. 440016247007, totaling $2,816,860.82, were involved in the offenses charged in Counts One through Five of the indictment as to each of Defendants G. Jesse Podlucky and Karla S. Podlucky, and that such funds are forfeitable to the United States.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that all

1

right, title, and interest of Defendants G. Jesse Podlucky and Karla S. Podlucky, if any, in the funds seized from Charles Schwab Account No. 440016247007 on October 8, 2010, totaling $1,372,966.04, are hereby forfeited to the United States pursuant to Federal Rule of Criminal Procedure 32.2(b) and 18 U.S.C. §§ 982(a)(1) and 982(b)(1). It is further ordered that an in personam judgment in the amount of $1,443,894.78 be, and hereby is, entered against each of Defendants G. Jesse Podlucky and Karla S. Podlucky and in favor of the United States pursuant to Federal Rule of Criminal Procedure 32.2(b) and (e), 18 U.S.C. §§ 982(a)(1) and 982(b)(1), and 21 U.S.C. § 853(p). Each Defendant shall be jointly and severally liable for this amount. This forfeiture judgment shall be part of Defendants' sentences and criminal judgments.[1]

The United States is hereby directed to file a motion requesting authority to begin ancillary forfeiture proceedings pursuant to 18 U.S.C. § 982(b)(1), which incorporates, inter alia,

---

[1] It is not entirely clear what impact the Government seeks for this Order to have as to co-defendant Gregory Podlucky. Pursuant to his plea agreement, Gregory Podlucky consented to the forfeiture of the funds seized from Charles Schwab Account No. 440016247007 in the amount of $1,372,966.04. However, he was sentenced seven months ago. Based on the Government's earlier arguments in this case that a preliminary order of forfeiture must be issued at or before sentencing, there is no basis for incorporating this order into Gregory's sentence and judgment. Therefore, while Gregory Podlucky has waived any interest in the amount seized from the Charles Schwab account, the Court will not impose an in personam judgment against him for the balance.

21 U.S.C. § 853(n), in order to adjudicate the interest of any person other than Defendants in the money seized from the Charles Schwab account.

## Discussion

18 U.S.C. § 982(a)(1) provides that the Court, in imposing sentence on a defendant convicted of an offense in violation of 18 U.S.C. §§ 1956 or 1957, shall order that the defendant forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property. The Court applies a preponderance of the evidence standard in determining whether and to what extent forfeiture is applicable under Section 982(a)(1). See United States v. Voigt, 89 F.3d 1050, 1084 (3d Cir. 1996). Defendants do not challenge that the proceeds of the auctions of various jewelry purchased with illegally obtained funds deposited into Charles Schwab Account No. 440016247007 (the "Schwab Account") were involved in the money laundering scheme charged at Count One of the indictment and/or Counts Two through Five alleging discrete acts of money laundering. The evidence establishes that these proceeds total $2,816,860.82. Indeed, there is no question that these funds are forfeitable.

Neither Defendant opposes forfeiture of the funds seized from the Schwab Account and neither claims any interest therein. The disagreement is as to their liability in regard to the difference between the amount deposited from the auctions of the jewelry and

3

the amount seized on October 8, 2010. Defendant G. Jesse Podlucky challenges the entry of an in personam judgment against him for the balance of the funds deposited into the account in its entirety based on his alleged level of participation. Defendant Karla S. Podlucky does not contest the entry of a judgment, but argues that the judgment should be less than what the Government seeks and that the seizure of the Schwab Account funds satisfies the judgment in any event. The Court finds no merit in these arguments.

### A.   G. Jesse Podlucky

Defendant G. Jesse Podlucky ("Jesse") first argues that he cannot be subject to an in personam judgment because the Government cannot seek the forfeiture of substitute assets from him. He argues that he acted merely as an intermediary of the funds and that the substitution of assets provisions of 21 U.S.C. § 853(p) therefore do not apply, pursuant to 18 U.S.C. § 982(b)(2). However, his argument ignores the language of the statute on which his argument is premised. Section 982(b)(2) provides:

> The substitution of assets provisions of [Section 853(p)] shall not be used to order a defendant to forfeit assets in place of the actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense **unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in**

4

***any twelve month period.***

(Emphasis added). Defendant cites the first half of this provision while disregarding the fact that he clearly does not meet the criteria set forth in the second half. Indeed, the transactions in Counts Two through Five alone, for which Defendant was convicted and which involved more than three transactions totaling far more than $100,000 over less than a year, establish that Section 982(b)(2) does not apply and that Defendant Jesse is subject to forfeiture of substitute assets.

Moreover, even if the statute did not expressly preclude Defendant Jesse from being considered to be a mere intermediary, the facts adduced at trial demonstrate that his role was far more extensive than that of an intermediary. The facts show that he was knowingly involved in creating and/or operating multiple entities and in setting up various bank accounts at different banks in the names of these entities, particularly Morganics USA, LLC. Money was laundered through these entities with his knowledge and often as a result of his actions. Defendant Jesse was also involved in other Podlucky-controlled entities, serving, for example, as a trustee of Twilight Palm Canyon Asset Management Trust, the entity for which the Schwab Account was opened. Indeed, Defendant was involved in numerous transactions involving many entities created, or at least used, to filter funds through many layers. Further, he was involved in the process of

auctioning off the jewelry that his co-defendant and father, Gregory Podlucky, had purchased, the proceeds of which were deposited into the Schwab Account. Along with his father, Defendant Jesse met with Sotheby's representatives claiming to be a representative of Twilight Palm Canyon. Defendant was aware of the use of a false narrative as to the origin of the jewelry. He therefore was involved at several levels of the conspiracy and was well-aware of its overall complexity.

Defendant further argues that Section 853(p) only allows for the forfeiture of substitute assets if property is made unavailable "as a result of any act or omission of the defendant" and that it was the acts and omissions of co-defendant Gregory Podlucky, and not those of Defendant, that rendered the funds in the Schwab Account unavailable. Again, the Court disagrees.

Section 853(p) provides that a court shall order the forfeiture of any other property of a criminal defendant, up to the value of any property made unavailable, if "as a result of any act or omission of the defendant," the following applies as to the forfeitable property:

> (A) It cannot be located upon the exercise of due diligence;
>
> (B) It has been transferred or sold to, or deposited with, a third party;
>
> (C) It has been placed beyond the jurisdiction of the Court;
>
> (D) It has been substantially diminished in value;

or

> (E) It has been commingled with other property which cannot be divided without difficulty.

18 U.S.C. § 853(p). Defendant Jesse was convicted of the money laundering conspiracy at Count One. Money was moved out of the Schwab Account as a part of this conspiracy. As a member of the conspiracy, Jesse is responsible not only for his own actions, but the foreseeable acts of his co-conspirators. See United States v. Bollin, 264 F.3d 391, 419 (4th Cir. 2001)(finding a co-conspirator who received only $30,000 to be jointly and severally liable for $1,200,000 forfeiture judgment applicable to the conspiracy as a whole). Indeed, Section 982(a)(1) imposes "a rule of joint and several liability in the case of a money laundering conspiracy." United States v. Pitt, 193 F.3d 751, 765 (3d Cir. 1999). "The statute does not say that each conspirator shall forfeit only such property involved in the offense which is or has ever been in that conspirator's possession. Rather, the statute recognizes that the amount of property involved in a money laundering conspiracy cannot be different for different conspirators." Id.

Defendant Jesse's argument that it was his co-conspirator, and not him personally, who was responsible for rendering the funds unavailable therefore misses the mark. Gregory Podlucky's transactions from the Schwab Account were not only foreseeable to Jesse as a part of their conspiracy, Jesse knew about the vast majority of them. Indeed, as discussed above, Jesse was very

7

involved in transferring money into and out of the Schwab Account himself.

Accordingly, the Court finds that the actions of Jesse Podlucky and/or acts attributable to him through the conspiracy caused the balance of funds in the Schwab Account from the auctions of the jewelry at issue to be rendered unable to be located upon the exercise of due diligence, to be transferred to and/or deposited with third parties, and/or to be commingled with other property which cannot be divided without difficulty. An *in personam* judgment for the balance of the money deposited into the Schwab Account from the auctions of the jewelry is warranted.

### B. Karla S. Podlucky

Defendant Karla S. Podlucky ("Karla"), although she does not contest the imposition of a money judgment against her, does disagree as to the allowable amount of such a judgment. Her argument is premised primarily on the fact that she was acquitted of Counts One and Two, which included the money laundering conspiracy. She argues that she should be responsible only for the conduct for which she was convicted at Counts Three, Four, and Five, involving discrete acts of money laundering.

The Court first notes that forfeiture may be ordered even on counts on which a defendant is acquitted if the sentencing court finds that such an order is warranted. See United States v. Plaskett, 355 Fed. Appx. 639, 644 (3d Cir. 2009)("So long as the

8

sentencing court finds by a preponderance of the evidence that the criminal conduct through which the proceeds were made was foreseeable to the defendant, the proceeds should form part of the forfeiture judgment." (quoting United States v. Fruchter, 411 F.3d 377, 384 (2d Cir. 2005))). Accordingly, the Court may consider foreseeable conduct related to counts on which Defendant Karla was acquitted in determining the appropriate forfeiture in this case.

Defendant Karla further argues that, although the Court may consider acquittal conduct, it did not find her responsible for laundered funds other than those involved in the discrete transactions underlying her counts of conviction for purposes of determining her recommended sentencing range under the United States Sentencing Guidelines. She argues that the same preponderance of the evidence standard applies in determining relevant conduct under Section 1B1.3 of the Guidelines as applies in determining responsibility for forfeiture. However, this argument ignores the difference between the nature of relevant conduct for sentencing purposes and the nature of criminal forfeiture.

Pursuant to USSG § 1B1.3, determinations as to offense level under Chapters Two and Three of the Guidelines are made after consideration of relevant conduct. Application Note 1 acknowledges that the principles set forth in Section 1B1.3 are not always the same as principles applicable in determining

9

criminal liability in other contexts. In determining relevant conduct under the Guidelines, the Court is attempting to determine an appropriate sentence based on a defendant's actual conduct. The purpose of criminal forfeiture, on the other hand, is to disgorge any profits that a defendant realized from his or her illegal activity. See Plaskett, 355 Fed. Appx. at 644; United States v. Awad, 598 F.3d 76, 79 (2d Cir. 2010). It is focused primarily on the defendant's gain, rather than on the losses of any victims. See Plaskett, 355 Fed. Appx. at 644. Here, then, the Court is not attempting to determine the harm caused by Defendant's conduct, but rather what she gained by her conduct.

There is no question that the entire amount of $2,816,860.82 deposited into the Schwab Account from the proceeds of the jewelry auctions is forfeitable generally. In fact, Defendant Karla claims no interest in the funds. The problem facing the Court is that just over half of that money was spent and/or disbursed, and the Court must decide what responsibility the co-defendants bear, based on their acts and omissions, for this disbursement. The Government is not, therefore, arguing, that Defendant Karla is responsible for the illegal funds being in the Schwab Account in the first place. It is arguing, instead, that she is responsible under Section 853(p) for the disbursement of property in the account already determined to be forfeitable in this case because of her acts and omissions.

The record clearly shows, by a preponderance of the evidence, that Karla not only was very involved in the process of rendering unavailable funds in the Schwab Account from the auctions of the jewelry at issue, she also profited immensely from it. She helped create and operate Twilight Palm Canyon Asset Management Trust, the entity for which the Schwab Account was created. She was also involved in creating and operating several of the entities to which funds were disbursed from the Schwab Account, such as Green Special Advisers LLC and Marantha Trust. She personally engaged in a number of transactions disbursing funds from the Schwab Account to these entities and to other third parties for personal expenses for her and her family. Further, the Court has found that she obstructed justice by helping cause the address of the Podlucky family's residence to be changed from 345 Cobblestone Lane to 297 Sunrise Lane in December 2010 and January 2011, when she knew the address was a matter significant to the Government's investigation in this matter. Twilight Palm Canyon was opened using the 297 Sunrise Lane address, which at the time was an address not known to the United States Postal Service and which, accordingly, was not directly tied to the Podluckys. Shortly after the false address was discovered and the assets of the trust were frozen, Defendant proceeded to have the family address changed to the same address used by the trust. As the Court has already found, such actions were an attempt to frustrate the

discovery of the proceeds of the jewelry auctions by legitimizing the trust.

Just as important were her omissions. While neither the jury nor the Court found her criminally responsible for the entirety of the money laundering conspiracy, it is clear that she was aware of the illegal nature of the funds in the Schwab Account. In her role with Twilight Palm Canyon, as well as entities receiving money from the Schwab Account, she certainly was in a position to prevent the tainted money from leaving the Schwab Account, but did not. While Defendant Karla's actions in disbursing the money and her omissions may not have necessarily been part of the conspiracy, they were, by a preponderance of the evidence, acts and omissions that caused funds in the Schwab Account from the auctions of the jewelry at issue to be rendered unable to be located upon the exercise of due diligence, to be transferred to and/or deposited with third parties, and/or to be commingled with other property which cannot be divided without difficulty. She was not involved in all of the transactions involving funds leaving the Schwab Account, but, based on her overall acts and omissions, the unavailability of the remaining funds from the Schwab Account was foreseeable. See Plaskett, 355 Fed. Appx. at 644.

It must be remembered that the Court is not attempting to determine an appropriate offense level; it is attempting to

disgorge the proceeds of criminal activity. Defendant Karla profited directly and indirectly from the illegally obtained funds from the auctions of the relevant jewelry, and she was instrumental, both in her acts and omissions, in rendering many of these proceeds to be unavailable pursuant to Section 853(p). Accordingly, an in personam judgment for the balance of the money deposited into the Schwab Account from the auctions of the jewelry is warranted. Moreover, because her conduct in relation to her convictions under Sections 1956 and 1957 involved various actions and omissions regarding the Schwab Account, including obstructing justice in relation to that account, the illegal funds in that account were "involved" in her offenses of conviction pursuant to Section 982(a)(1). Again, Defendant may not have been responsible for the illegal funds being placed in the Schwab Account, but she is clearly responsible for that forfeitable property being moved beyond the reach of the Government.

Defendant Karla's other arguments are unavailing. Although she contends that the amount of forfeiture which the Court may order is limited by 18 U.S.C. § 1956(b)(1), that provision deals with civil penalties, not criminal forfeiture. Section 982(a)(1), and not Section 1956(b)(1), governs findings regarding criminal forfeiture. Further, Defendant's contention that she is indigent and has no assets has no relevance. The Third Circuit Court of Appeals has made it clear that in personam forfeiture judgments of

13

the type here are appropriate even where the amount of the judgment exceeds the defendant's available assets at the time of conviction. See United States v. Vampire Nation, 451 F.3d 189, 203 (3d Cir. 2006). Finally, while Defendant does not fully develop her argument regarding double jeopardy, in any event, double jeopardy is not implicated in this case. See, e.g., Westine v. United States, 94 F.3d 645 (6th Cir. 1996).

                                                    s/Alan N. Bloch
                                                    United States District Judge

ecf:    Counsel of record